FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 FEB 18 PM 4: 11

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NAK KIM CHHOEUN | CIVIL ACTION |
| VERSUS | NO. 03-1386 |
| JOHN ASHCROFT, ATTORNEY GENERAL AND IMMIGRATION AND NATURALIZATION SERVICE | SECTION "J"(4) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**. Upon review of the petition, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

## I. Factual and Procedural Background

The petitioner, Nak Kim Chhoeun ("Chhoeun"), is a native and a citizen of Cambodia having been born in Kampuchea.[1] He is confined in the Orleans Parish Prison system within the Eastern District of Louisiana.[2] He was conditionally admitted into the United States through San Francisco,

---

[1] Rec. Doc. No. 1, Petition, p. 1; Rec. Doc. No. 5, Government's Response, Exh. D.

[2] *Id.*

DATE OF ENTRY
FEB 19 2004

DATE OF MAILING — FEB 19 2004

__ Fee
__ Process
X Dktd
__ CtRmDep
__ Doc. No.

California as a refugee.[3] His status was adjusted as a lawful permanent resident on January 10, 1984.[4]

On February 11, 1999, Chhoeun was convicted of carrying a firearm, a semi-automatic handgun, on public streets or on public property in Pennsylvania. He was sentenced to serve one to two years imprisonment.[5]

He was convicted a second time on March 8, 2001, in Pennsylvania on a conspiracy charge. He was sentenced to serve five years imprisonment. The sentence was amended on April 17, 2001, to ten years of reporting probation.[6]

On April 26, 2001, the Immigration and Naturalization Service ("INS"), now known as the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security, issued a detainer and Notice to Appear to Chhoeun.[7] The BCIS charged him with removability under three provisions: (1) § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") (Title 8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(F) (Title 8 U.S.C. § 1101(a)(43)), a crime of violence; (2) INA § 237(a)(2)(A)(iii) as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(U), conspiracy to commit a felony; and (3) INA § 237(a)(2)(A)(iii) as an alien who has been convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning,

---

[3] Rec. Doc. No. 5.

[4] *Id.*

[5] *Id.*, Exh. A.

[6] *Id.*, Exh. B.

[7] *Id.*, Exh. C.

possessing or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry in violation of any law, any weapon, part, or accessory which is a firearm or destructive device. He was arrested on September 9, 2002, and found to be removable on or about November 16, 2002.[8]

On December 16, 2002, a hearing was held before an Immigration Judge in York, Pennsylvania to consider Chhoeun's application, filed by counsel, for asylum, withholding of removal under § 241(b)(3), cancellation of removal under § 240A(a), and withholding of removal under Art. III of the Convention Against Torture. The Immigration Judge denied the applications and ordered Chhoeun removed from the United States to Kampuchea, Cambodia.

Chhoeun appealed to the Bureau of Immigration Appeals ("BIA"). The removal order was affirmed and rendered final on May 29, 2003.[9] Thereafter, the Interim Field Office Director of the Bureau of Immigration and Customs Enforcement ("BICE") requested travel documents from the Consul General of the Royal Embassy of Cambodia.[10]

The record does not contain any indication that Chhoeun has received a 90-day custody review since the removal order became final on May 29, 2003. The record does not contain any indication on the status of the requested travel documents. Both parties recognize, however, that although the 90-day removal period has expired, Chhoeun remains in BCIS custody in the Orleans Parish Prison system awaiting deportation to Cambodia.

---

[8] Rec. Doc. No. 1.

[9] Rec. Doc. No. 5, Exhs. E, F.

[10] *Id.*, Exh. G.

## II. Federal Habeas Corpus Petition

On May 13, 2003, Chhoeun filed a Petition for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2241 against the United States Attorney General and the INS, complaining that he is still in custody and that his bail is excessive. He alleges that there is no repatriation agreement with Cambodia and that his continued custody is in violation of due process.[11]

The Government responded to the petition and argues that Chhoeun's detention is authorized by statute because of his final deportation order.[12] The Government also contends that there is no reason to believe that travel documents will not be issued or that Chhoeun will not be repatriated.

## III. Analysis

### A. Federal Jurisdiction

The general habeas corpus statute, Title 28 U.S.C. § 2241, provides that the federal courts have the authority to grant a Writ of Habeas Corpus to a person held "in violation of the Constitution or laws and treaties of the United States." Title 28 U.S.C. 2241(c)(3). The statute also grants federal courts jurisdiction to review the lawfulness and constitutionality of executive detention.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the United States Supreme Court concluded that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. This Court therefore has jurisdiction to address Chhoeun's § 2241 petition challenging his post-removal-period detention.

---

[11] Rec. Doc. No. 1, Petition.

[12] Rec. Doc. No. 5.

## B. Likelihood of Deportation in the Reasonably Foreseeable Future

INA § 241(a)(1) and (2) (Title 8 U.S.C. § 1231(a)(1) and (2)) provides that the United States Attorney General shall remove an alien within the "removal period," which it generally defines to be 90-days from when an order of removal becomes administratively final, when any judicial review thereof is completed, or when the alien is released from any non-immigration confinement, whichever is latest, and shall detain the alien during the removal period. Further, INA § 241(a)(3) (Title 8 U.S.C. § 1231(a)(3)) provides that the alien, if not removed during the removal period, shall, pending removal, be subject to supervision under regulations prescribed by the Attorney General. One such regulation applicable in this case is INA § 241(a)(6) (Title 8 U.S.C. § 1231(a)(6)), which provides that an alien, like Chhoeun, who is removable under Title 8 U.S.C. § 1227(a)(2) (INA § 237(a)(2)) may be detained beyond the removal period until his removal can be effected.

In *Zadvydas*, the Supreme Court determined that Due Process allowed for continued detention of a deportable alien beyond the 90-days when there is a likelihood that the detainee will be deported within the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 699-700.

The *Zadvydas* opinion involved two instances of detention.[13] Most relevant to this case, is the second detainee, Kim Ho Ma, a Cambodian national who was brought to the United States at the age of seven. *Id.* at 685. After serving two years imprisonment for manslaughter, Ma was released

---

[13]The main focus of the opinion was Kestusis Zadvydas, a resident alien born of Lithuanian parents in a displaced persons camp in Germany in 1948. *Id.* at 684. Upon serving several years of imprisonment in the United States for various crimes, Zadvydas was ordered deported to Germany, which refused to accept the individual because he was not a German citizen. Zadvydas was rejected by the Dominican Republic (his wife's home country), as well as by Lithuania for lack of documentation of his parents' citizenship. *Id.* Zadvydas, who was being held by the INS under a continued detention order, sought his release through federal habeas corpus because there was no country to which he could be deported. A judge of this District ordered Zadvydas released finding that his continued detention, with no likelihood of deportation, violated due process. The Fifth Circuit reversed and certiorari was granted, leading to the opinion addressed herein. Applying its reasoning, the Supreme Court determined that Zadvydas was entitled to probation consideration because repatriation was unlikely since there was no country to which he could be deported.

into INS custody for removal to Cambodia, despite the lack of any repatriation treaty between Cambodia and the United States that would have provided for Ma's return. *Id.* The Ninth Circuit concluded that, the absence of a repatriation agreement between the United States and Cambodia, and the unlikelihood of a successful deportation entitled Ma to release because the acceptable time for detention had expired after 90-days.

On certiorari, the Supreme Court vacated the Ninth Circuit's decision and remanded with instructions for that court to determine if deportation could be accomplished within a reasonably foreseeable time. In doing so, the Supreme Court determined that Due Process allowed for an immigration detainee to be held beyond the 90-day removal period for as long as the Government could establish that there was a likelihood of deportation within a reasonably foreseeable time. Thus, a habeas court is required to determine whether the detention exceeds a period reasonably necessary to secure removal. *Id.* at 699. In doing so, it should measure reasonableness primarily in terms of the statute's basic purpose - to assure the alien's presence at the moment of removal. *Id.*

If removal is not reasonably foreseeable, the court should hold a continued detention unreasonable and hence no longer authorized by statute. If removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period. *Id.*, at 700.

The Supreme Court also created a six-month presumptive period which allowed the Government six months from finality of a deportation order to secure removal of the detainee after which the Government would bear the burden to establish the likelihood of removal within a reasonably foreseeable period. That is, the Supreme Court determined that a six month detention is a presumptively reasonable period of time to detain a deportable alien beyond the administrative

6

finality of the deportation order. *Id.* at 701. However, when that six months (three additional months after the original 90-day removal period) expires, the alien can show good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future. At that time, the burden shifts back to the Government to rebut this showing.[14]

On remand, the Ninth Circuit determined that Ma's repatriation could not be accomplished because there was no likelihood that a repatriation agreement would be reached by which Ma's deportation could be accomplished. The Court ordered that he be released on probation pending deportation. *Ma v. Ashcroft*, 257 F.3d 1095 (9th Cir. 2001). In this case, the Court must determine whether Chhoeun's continued confinement complies with the Due Process Clause in that it is likely that he will be repatriated to Cambodia within the reasonably foreseeable future.

C. **Application of *Zadvydas* to Chhoeun**

Chhoeun argues that the Government will be unable to secure his travel documents to Cambodia since there is no repatriation agreement with that country. The Government boldly contends that there is no reason to believe that the documents will not be issued.

The records before the Court reflect that Chhoeun has been in INS or BCIS custody for approximately 17 months, since on or about September 9, 2002, when he claims to have been arrested by the INS.[15] The 90-day removal period, however, began May 29, 2003, upon finality of

---

[14]The Supreme Court also cautioned that the six-month presumption does not mean that every alien not removed must be released after six months. To the contrary, the Court held that the alien may be held in confinement until such time as the INS or a federal court determines that there is no significant likelihood of removal in the reasonably foreseeable future. For detention to remain reasonable, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, at 701. On remand, the Fifth Circuit ordered Zadvydas released on probation because the Government failed to prove a likelihood of deportation in the reasonably foreseeable future. *Zadvydas v. Davis*, 285 F.3d 398 (5th Cir. 2002).

[15]Rec. Doc. No. 1, p. 2.

the final deportation order. Simple mathematics indicates that the 90-day removal period expired on August 27, 2003, and the six-month presumptive period provided in *Zadvydas* expired on or about November 25, 2003. Chhoeun has, nevertheless, remained in custody with no evidence of record that he has had a subsequent review by the Director.

Further, like Ma, the United States has no on-going process by which Cambodia will provide travel documents for the return of its citizens. There is no repatriation agreement with Cambodia. *Ma v. Ashcroft*, 257 F.3d at 1115. The Government has not provided any indication that such an agreement is forthcoming, or that travel documents have ever been obtained from the Cambodian Consul to repatriate a detainee. *Id*. The Government also has not presented evidence of any further attempts to follow-up on its request for travel documents. Thus, there is no feasible process or foreseeable likelihood by which Chhoeun can be repatriated to Cambodia.

Reasonableness requires that the time-line to deportation shrinks in proportion to the passing period of incarceration. That is, "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, at 701. The Government has failed to meet this burden.

Chhoeun, like Ma, has been held beyond the acceptable period with no indication as to when he will be deported, and the Government has not provided any indication of the status of the application for travel documents or of the realistic likelihood of a negotiated repatriation agreement with Cambodia. The Government has not established, therefore, that deportation will occur within the "reasonably foreseeable future." *Zadvydas*. The Court must therefore conclude that, because removal is not reasonably foreseeable, Chhoeun's continued detention is unreasonable.

## IV. Recommendation

It is therefore **RECOMMENDED** that Nak Kim Chhoeun's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. §2241 be **GRANTED**.

It is further **RECOMMENDED** that the BCIS, through the Department of Homeland Security and the United States Department of Justice, be **ORDERED** to immediately release Chhoeun from physical custody, subject to supervision by the BCIS in accordance with Title 8 U.S.C. § 1231(a)(3) and agency regulations under such terms and conditions as the BCIS deems appropriate, except that the BCIS cannot detain Chhoeun under any regulation providing for the automatic detention of an alien who is a convicted felon or for any reason other than for violation of the conditions of his supervision, pending the issuance of travel documents by the Kampuchea or Cambodia government to effect Chhoeun's removal from the United States.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 18th day of February, 2004.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE